# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

STEVEN MAX BRINER,

        Petitioner,

v.                            Case No:  6:15-cv-1117-Orl-40TBS

SECRETARY, DEPARTMENT OF
CORRECTIONS and ATTORNEY
GENERAL, STATE OF FLORIDA,

        Respondents.
_____/

## ORDER

This matter comes before the Court on a 28 U.S.C. § 2254 petition for habeas corpus relief filed by Steven Max Briner ("Petitioner" or "Briner"), a prisoner of the Florida Department of Corrections. (Doc. 1, filed July 9, 2015). Briner, proceeding *pro se*, attacks his convictions for second degree murder and armed burglary of a dwelling. (*Id.*). Respondent filed a response to the petition. (Doc. 14). Briner filed a reply (Doc. 20), and the matter is ripe for review.

Upon due consideration of the pleadings and the state court record, the Court concludes that Briner's petition must be denied.

## I.      Background and Procedural History[1]

In 2009, a grand jury indicted Briner for premeditated murder, in violation of Florida Statute § 782.04(1)(a) (count one) and armed burglary of a dwelling, in violation

---

[1] Citations to exhibits are to those filed by Respondents on August 26, 2016. (Doc. 15). Citations to the trial transcript, located in Exhibit B, will be cited as (T. at __).

of Florida Statute §§ 810.02(1)(b), 810.02(2)(b), and 810.01 (count two). (Ex. A). On June 25, 2012, a jury found Briner guilty on the lesser-included charge of second degree murder on count one and guilty as charged on count two. (T. at 1294; Ex. C). He was sentenced to thirty years in prison. (Doc. 15-1 at 49). Briner's convictions and sentence were *per curiam* affirmed on appeal. (Ex. E).

On May 7, 2014, Briner filed a motion for post-conviction relief under Rule 3.850 of the Florida Rules of Criminal Procedure ("Rule 3.850 Motion"). (Ex. I). The post-conviction court summarily denied all relief, and Florida's Fifth District Court of Appeal ("Fifth DCA") affirmed without a written opinion. (Ex. J; Ex. O); *Briner v. State*, 166 So. 3d 803 (Fla. 5th DCA 2015).

On March 27, 2015, Briner filed a state petition for writ of habeas corpus alleging ineffective assistance of appellate counsel. (Ex. S). Florida's Fifth DCA denied the petition without a written opinion. (Ex. V).

## II.    Legal Standards

### A.    The Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This standard is both mandatory and difficult to meet. *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issued its decision. *White*, 134 S. Ct. at 1702; *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). That said, the Supreme Court has also explained that "the lack of a Supreme Court decision on nearly identical facts does not by itself mean that there is no clearly established federal law, since 'a general standard' from [the Supreme Court's] cases can supply such law." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1449 (2013) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). State courts "must reasonably apply the rules 'squarely established' by [the Supreme] Court's holdings to the facts of each case." *White*, 134 S. Ct. at 1706 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)). Notably, a state court's violation of <u>state</u> law is not sufficient to show that a petitioner is in custody in violation of the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Wilson v. Corcoran*, 562 U.S. 1, 16 (2010).

Even if there is clearly established federal law on point, habeas relief is only appropriate if the state court decision was "contrary to, or an unreasonable application of," that federal law. 29 U.S.C. § 2254(d)(1). A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S. 133, 134 (2005); *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams*, 529 U.S. at 406). The petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White*, 134 S. Ct. at 1702 (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)). Moreover, "it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." *Knowles*, 556 U.S. at 122.

Even when the opinion of a lower state post-conviction court contains flawed reasoning, the federal court must give the <u>last</u> state court to adjudicate the prisoner's claim on the merits "the benefit of the doubt." *Wilson v. Warden, Ga. Diagnostic Prison*, 834 F.3d 1227, 1235 (11th Cir. 2016), *cert granted Wilson v. Sellers*, 137 S. Ct. 1203 (Feb. 27, 2017). A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference. *Ferguson v. Culliver*, 527 F.3d 1144, 1146 (11th Cir. 2008). Therefore, to determine which theories could have supported the state appellate court's decision, the federal habeas court may look to a state post-

conviction court's previous opinion as one example of a reasonable application of law or determination of fact; however, the federal court is not limited to assessing the reasoning of the lower court. *Wilson*, 834 F.3d at 1239.

Finally, when reviewing a claim under § 2254(d), a federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003) ("a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding") (dictum); *Burt v. Titlow*, 134 S. Ct. 10, 15-16 (2013) (same).

### B.     Ineffective Assistance of Counsel

In *Strickland v. Washington*, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. 466 U.S. 668, 687-88 (1984). A petitioner must establish that counsel's performance was deficient and fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. *Id.* This is a "doubly deferential" standard of review that gives both the state court and the petitioner's attorney the benefit of the doubt. *Burt*, 134 S. Ct. at 13 (citing *Cullen v. Pinholster*, 563 U.S. 170 (2011)).

The focus of inquiry under *Strickland*'s performance prong is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688-89. In reviewing

counsel's performance, a court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* at 689. Indeed, the petitioner bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable[.]" *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006). A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a "highly deferential" level of judicial scrutiny. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690).

As to the prejudice prong of the *Strickland* standard, Petitioner's burden to demonstrate prejudice is high. *Wellington v. Moore*, 314 F.3d 1256, 1260 (11th Cir. 2002). Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* At 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

### III.    Analysis

Briner raises seven claims in the instant habeas petition. He asserts that trial counsel was ineffective for failing to: (1) file a motion to dismiss based on Florida's "Stand your Ground" law; and (2) object to the reading of jury instructions for lesser-included offenses. He asserts that appellate counsel was ineffective for failing to argue that: (3) reading jury instructions for lesser-included offenses was fundamental error; (4) the trial

court erred by denying his motion for a judgment of acquittal; (5) the trial court erred by denying his motion to strike the entire jury panel; and (6) the prosecutor shifted the burden of proof to the defense during closing argument. In his seventh claim, Briner asserts that the trial court erred by denying his motion to suppress his statement to the police. (Doc. 1 at 4-130).

Each of Briner's claims was raised in his Rule 3.850 Motion, his state habeas petition, or on direct appeal. The first two claims were rejected by the post-conviction court, and the rejection affirmed by the Fifth DCA without a written opinion. The remaining claims were denied by Florida's Fifth DCA. Accordingly, these grounds are exhausted. The silent affirmances of the lower court rulings are entitled to deference, and this Court must determine whether any arguments or theories could have supported the appellate court's decisions. *Wilson*, 834 F.3d at 1235. Each claim will be addressed separately.

### A.    Claim One

Briner asserts that Counsel was constitutionally ineffective for failing to file a pre-trial motion to dismiss on the ground of immunity from prosecution under Florida Statute § 776.032 (Florida's "Stand Your Ground" law). (Doc. 1 at 3-4). Briner claims that he had a reasonable belief that the victim, Vincent Price, was going to kill him and that the deadly force he used was necessary to prevent imminent death or great bodily harm. (*Id.* at 5). Briner argues that, had Counsel filed the § 776.032 motion, "[t]here is a reasonable probability that with Mr. Briner's testimony at an evidentiary hearing on such a motion to dismiss," he could have demonstrated entitlement to immunity. (*Id.* at 7).

The post-conviction court denied this claim on both prongs of *Strickland*. (Ex. J). The court determined that Briner's actions after the killing—stealing Price's cocaine and then returning to his home hours later to steal his money—were contrary to a claim of self-defense because the actions suggested "a guilty conscience and the intent to flee after the fact, rather than a mind to call the police immediately to report the death and his version of the events." (*Id.* at 6) (quoting *Bogart v. State*, 114 So. 3d 316, 318 (Fla. 4th DCA 2013)). The court also noted that the extensive knife wounds suffered by the victim, as well as the medical examiner's testimony regarding the position of the victim when the wounds were inflicted,[2] belied any assertion that the wounds were inflicted as a legitimate act of self-defense. (Ex. J at 7). The post-conviction court concluded that "if the defense attorney had filed the Motion to Dismiss based on the Stand Your Ground law, it would have been denied." (*Id.*). Florida's Fifth DCA affirmed. (Ex. O).

Briner is not entitled to habeas relief on this claim because he cannot demonstrate *Strickland* prejudice from Counsel's failure to file a pre-trial § 776.032 motion to dismiss. The post-conviction court—and by its silent affirmance, the appellate court—has already said what would have happened had Counsel filed a § 776.032 motion; it would have been denied.[3] State courts, not federal courts sitting in habeas review, are the final arbiters of state law. *See Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997) (noting that it is a fundamental principle that "state courts are the final arbiters of state law, and

_____

[2] The post-conviction court determined that the "victim was on the floor and was no threat to [Petitioner] when the fatal stab wounds were inflicted. (Ex. J at 7).

[3] Notably, the post-conviction judge also presided over Petitioner's trial.

federal habeas courts should not second-guess them on such matters."). Moreover, Briner raised the issue of self-defense at trial where the state had the greater burden of showing beyond a reasonable doubt that Briner did <u>not</u> act in self-defense. *Fields v. State*, 988 So. 2d 1185, 1186 (Fla. 5th DCA 2008); *see also* Jury Instruction, T. at 1276 ("If in your consideration of the issue of self-defense, you have a reasonable doubt on the question of whether the Defendant was justified in the use of deadly force, you should find the defendant not guilty."). The state met this burden of showing that Briner's use of force was not justified, and the jury found Briner guilty of second degree murder. Had Briner received a pretrial hearing, <u>he</u> would have been required to prove, by a preponderance of the evidence, that his use of deadly force was justified. *Bretherick v. State*, 170 So. 3d 766 (Fla. 2015). Briner does not assert that he would have presented different evidence at a pretrial evidentiary hearing than he presented at trial or that he was, in any manner, limited in arguing self-defense at trial.

Given that the state was able to prove beyond a reasonable doubt that Briner was not legally justified in his use of force, Briner has not met his burden of showing *Strickland* prejudice from Counsel's failure to file a § 776.032. The state courts' rejection of this claim was neither contrary to *Strickland* nor based upon an unreasonable determination of the facts. Claim One is denied.

## B.    Claims Two and Three

In Claim Two, Briner asserts that Counsel was constitutionally ineffective for failing to object to the jury instructions on offenses not charged in the indictment. (Doc. 1 at 8). Specifically, he urges that Counsel should have objected to the jury instructions on

lesser-included offenses. (*Id.*). In Claim Three, Briner argues that the trial court committed fundamental error by reading the lesser-included instructions. (*Id.* at 9-10). Claim Two was raised in Briner's Rule 3.850 Motion. (Ex. I). Claim Three was raised in Briner's state petition for writ of habeas corpus as a claim of ineffective assistance of appellate counsel. (Ex. S).

The post-conviction court rejected Claim Two on the ground that the jury was properly instructed on the lesser included offenses because the evidence presented supported the instructions. (Ex. J at 8-9) (citing *Wheat v. State*, 433 So. 2d 1290 (Fla. 1st DCA 1983); *State v. Abreau*, 363 So. 2d 1063 (Fla. 1978); *Wimberly v. State*, 498 So. 2d 929 (Fla. 1986)). The post-conviction court further found that Briner could not demonstrate prejudice because the state would have objected to any omission of the lesser-included instructions. (*Id.*). Florida's Fifth DCA affirmed (Ex. O). Briner's state habeas claim of fundamental error was denied without a written opinion. (Ex. V). A review of the record supports the state courts' rejections of these claims.

In count one of the indictment, Briner was charged with premeditated first-degree murder. (Ex. A). The trial court instructed the jury on premeditated murder and on the lesser, uncharged offenses of second degree murder and manslaughter. Briner was found guilty of the lesser-included offense of second-degree murder. These two lesser-included offenses are necessarily included offenses of premeditated murder, and the trial court had no discretion on whether to read the instructions on these crimes. *See Bolin v. State*, 8 So. 3d 428, 429 (Fla. 2d DCA 2009) ("Manslaughter is a necessarily lesser included offense of premeditated first-degree murder."); *Chavers v. State*, 115 So. 3d 1017, 1020 (Fla. 1st

DCA 2013) (recognizing that second degree murder is a necessary lesser included offenses for premeditated murder, and "an instruction on second-degree murder [is] required."); Fla. Std. Jury Inst. (Crim.) 7.2. Because the trial court was required to read the jury instructions on manslaughter and second-degree murder, Briner cannot demonstrate deficient performance or prejudice from Counsel's failure to object to them. *See State v. Wimberly*, 498 So. 2d 929, 932 (Fla. 1986) ("The trial judge has no discretion in whether to instruct the jury on a necessarily lesser included offense. Once the judge determines that the offense is a necessarily lesser included offense, an instruction must be given.").

Equally unavailing is any argument that Briner suffered *Strickland* prejudice from Counsel's failure to object to the lesser-included instructions in count two of the indictment. In count two, Briner was indicted for armed burglary of a dwelling. The trial court instructed the jury on the lesser offenses of burglary of a dwelling, burglary, armed trespass, and trespass. However, Briner was convicted only of the charged offense — armed burglary of a dwelling. (Ex. C). In its charge to the jury, the trial court instructed:

> If you return a verdict of guilty, it should be for the highest offense which has been proven beyond a reasonable doubt. If you find that no offense has been proven beyond a reasonable doubt, then of course your verdict must be not guilty.

(T. at 1284). A jury is presumed to understand and follow its instructions. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000).

Given that the jury found Briner guilty of armed burglary of a dwelling (the main offense) after being instructed that it need consider lesser-included offenses only if the main offense was not proved beyond a reasonable doubt, the lesser-included instructions

could not have affected the jury's verdict; rather, they were simply irrelevant. Therefore, Briner cannot demonstrate *Strickland* prejudice on Claim Two. 28 U.S.C. § 2254(d).

As to Claim Three, "the fundamental error question is an issue of state law, and state law is what the state courts say it is." *Pinkney v. Sec'y, Dep't of Corr.*, 876 F.3d 1290, 1299 (11th Cir. 2017). By denying Briner's state habeas petition, Florida's Fifth DCA implicitly determined that any error was not fundamental error. Even if the issue was one that this Court could decide, the "doctrine of fundamental error should be applied only in rare cases where a jurisdictional error appears or where the interests of justice present a compelling demand for its application." *Smith v. State*, 521 So.2d 106, 108 (Fla. 1988). As noted, the trial court was required to read the lesser-included instructions on count one, and Briner was found guilty of the main offense on count two. Accordingly, the "interests of justice" do not compel a conclusion that fundamental error occurred. Claim Three is also denied under 28 U.S.C. § 2254(d).

### C.     Claim Four

Briner asserts that the trial court committed fundamental error by denying his motion for a judgment of acquittal at the close of the state's case. (Doc. 1 at 11). Specifically, he urges that the state did not meet its burden to rebut Briner's prima facie case of self-defense. (*Id.*). Briner raised this issue as a claim of ineffective assistance of appellate counsel in his state habeas petition (Ex. S), and it was rejected by Florida's Fifth DCA. (Ex. V).

At the close of the state's case, Counsel made a motion for a judgment of acquittal in which he urged that the state had not disproven beyond a reasonable doubt that Briner

acted in self-defense. (T. at 1033-34). The state argued in response that sufficient evidence

of both premeditation and burglary existed to take the case to the jury:

> We've got a burglary charged as remaining in, and the second element is Steven M Briner, after entering the structure the first element gives him permission -- remained therein with the intent to commit or attempt to commit an offense inside the structure. That's what he did. That's what he told you. That's what he told the jury through his statement. He was going over there to rip him off.

> Now once he -- and the State's position is Mr. Briner wasn't totally coming clean during that last interview, of course minimizing it. But whether he grabbed the crack in the napkin or the vial and the crack in the napkin, he's going for the door. He's committing a crime at that moment. When Mr. Price has him up against the door, and he stabs him three times in the leg, one of them was three and-a-half inches deep. If Mr. Price had a gun at that point, he would have been legally justified in shooting Mr. Briner.

> And we all know he didn't have a gun because there were no guns found. Mr. Briner didn't take the gun from the residence. And as far as him trying to retreat, he committed a crime and was trying to escape. He was -- this is -- this is not a *Heckman* issue at all.

> This issue is that they were inside Mr. Price's house, where he had a legal right to be. Mr. Briner went there for an illegal purpose. Once Mr. Price tried to stop him from that and he stabs him in the leg, at that point, the State's position is Mr. Price would have been justified in attacking him. As you can tell by the medical examiner, there's nothing that Mr. Price did, except – I mean he might have pushed him against the door. But, as far as the first degree premeditated murder is concerned. Judge, the premeditation, as the Court knows, is not fixed.

> The three stabs to the leg, the one – the four inch stab to the back of the neck, and the one to the neck, all happened before he's on his back and gets stabbed in the chest. That premeditation came with the first, the second, the third, the fourth, the fifth and the "sixth stab. At that point he wants him

> dead. That's first degree premeditated murder. And the State
> would ask the Court to deny the motion for judgment of
> acquittal.

(T. at 1049-50). The trial court denied Counsel's motion for a directed verdict. (*Id.* at 1051).

Briner urges that he was entitled to a judgment of acquittal because the state failed to rebut his reasonable hypothesis of self-defense. Once the defense presents a prima facie case of self-defense, the state must disprove the defense beyond a reasonable doubt. *Morgan v. State*, 127 So.3d 708, 717 (Fla. 5th DCA 2013); *Stinson v. State*, 69 So.3d 292, 291–92 (Fla. 1st DCA 2009); *Rasley v. State*, 878 So.2d 473, 476 (Fla. 1st DCA 2004). If the state fails to sustain its burden, the trial court must grant a motion for judgment of acquittal in favor of the defendant. *Morgan*, 127 So.3d at 717. However, the question of whether a defendant acted in justifiable self-defense is generally a question for the jury. *Morgan*, 127 So.3d at 717; *Stinson*, 69 So.3d at 292; *Rasley*, 878 So.2d at 476. Therefore, a motion for judgment of acquittal based on self-defense should not be granted unless "the evidence is such that no view which the jury may lawfully take of it favorable to the opposite party can be sustained under the law." *Rasley*, 878 So. 2d at 477 (quoting *Lynch v. State*, 293 So.2d 44, 45 (Fla. 1974)).

"[E]ven when there are no other witnesses to the events besides the defendant, a jury is not required to accept the defendant's testimony in support of [his] self-defense theory as true. Instead, it must consider the probability or improbability of the defendant's credibility in light of the circumstances established by other evidence." *Leasure v. State*, 105 So.3d 5, 14 (Fla. 2d DCA 2012) (citations omitted). Thus, a motion for judgment of acquittal should be denied "where a jury could reasonably infer guilt and

reject the defendant's explanation of self-defense, either because the defendant gave false, inconsistent, or incriminating statements, or because a common sense view of the circumstantial evidence would allow the jury to reject the defendant's story as unbelievable." *Cruz v. State*, 189 So.3d 822, 826 (Fla. 4th DCA 2015).

In the instant case, evidence was presented from which the jury could reasonably conclude that: Briner initiated the altercation with Price by attempting to steal his drugs. (T. at 1001, 1003, 1007). Briner planned to give Price forty dollars for a hundred dollars of drugs, and then run away. (*Id.* at 1009). Briner knew that if Price found out he had cheated him, he would "probably whup [his] ass." (*Id.* at 1001). Price blocked Briner from leaving and threatened to shoot him, although Briner admits that he never saw a gun. (*Id.* at 1003). Briner then stabbed him in the legs, neck, and back of the head. (*Id.* at 775-811, 1206-18). Thereafter, *after* Price was incapacitated, Briner stabbed him numerous times in the heart and chest, killing him. (*Id.* at 515, 752, 775-811). At some point, Briner straddled Price to stab him in the chest. (*Id.* at 1005-06). Afterwards, Briner took Price's crack cocaine. (1007). He later returned to Price's home and took his cash. (1005). Briner initially lied to the police about his encounter with Price—telling them that he was with his wife that evening, and then saying that he was with friends, before eventually confessing. (*Id.* at 675-87, 818-88, 895-96, 907-936).

A jury could reasonably reject Briner's self-defense claim based upon his false and contradictory statements and because "a common sense view of the circumstantial evidence could allow a jury to reject [his] ultimate explanation of what occurred as not being credible." *Early v. State*, 223 So. 3d 1023, 1029 (Fla. 1st DCA 2017). Accordingly, the

trial court properly denied Briner's motion for a judgment of acquittal. *Id.*; *see also Leasure*, 105 So.3d at 14–15 (affirming the denial of murder defendant's motion for judgment of acquittal based on self-defense where defendant's numerous inconsistent statements cast significant doubt on her assertions that she had a reasonable fear of death or great bodily harm and her version of events was not consistent with the evidence); *Stinson*, 69 So.3d at 292 (holding that the state's evidence was sufficient to rebut defendant's theory of self-defense where the state presented evidence that defendant lied to both the 911 operator and the police about her involvement in the shooting and one of the police officers testified that the defendant did not appear disheveled and did not have any bruises that would indicate that she was recently the victim of domestic violence); *Straight v. State*, 397 So.2d 903, 908 (Fla. 1981) ("When a suspected person in any manner attempts to escape or evade a threatened prosecution by flight, concealment, resistance to lawful arrest, or other indications after the fact of a desire to evade prosecution, such fact is admissible, being relevant to the consciousness of guilt which may be inferred from such circumstance."). Accordingly, this claim was properly rejected by the state court, and Briner is not entitled to federal habeas relief. 28 U.S.C. § 2254(d).

### D.    Claim Five

Briner argues that the jury was "tainted," substantially affecting their verdict. (Doc. 1 at 17). Specifically, he claims that prospective juror Nickell Mickey stated that she believed "if they have gotten this far, there's good reason." (*Id.*). In addition, prospective juror Scott Carter Stuart said that, as a former law enforcement officer, he was "aware of the court process and what happens behind the scenes. Some of the things that won't be

shown here[.]" (*Id.* at 18). Counsel moved to strike the entire jury panel based upon Stuart's statements, but the motion was denied. (*Id.* at 19).[4] Briner raised these issues in his state habeas petition as a claim of ineffective assistance of appellate counsel. (Ex. S at 13-14). Florida's Fifth DCA denied the petition without a written opinion. (Ex. V). Briner has not overcome the deference this Court must afford the state courts' rulings.

When the trial court denied Counsel's motion to strike the panel, the court implicitly determined that, notwithstanding Mickey's and Stuart's statements, each juror on the panel could set aside any opinion he or she might hold and decide the case on the evidence. This was a finding of fact that Briner must overcome by clear and convincing evidence before he can show entitlement to habeas relief. *See Patton v. Yount*, 467 U.S. 1025, 1037 (1984) (finding that when the impartiality of a juror is placed in issue "it is plainly one of historical fact; did a juror swear that he could set aside any opinion he might hold and decide the case on the evidence, and should the juror's protestation of impartiality have been believed."); *Rushen v. Spain*, 464 U.S. 114, 120 (1983) (state-court determination that juror's deliberations were not biased by ex parte communications is a finding of fact). Briner provides absolutely no evidence—much less clear and convincing evidence—that a biased juror actually served on his panel. *Rogers v. McMullen*, 673 F.2d 1185, 1189 (11th Cir. 1982) (defendant's Sixth Amendment right to a fair and impartial jury was not violated absent a showing that a jury member hearing the case was actually biased against him). In the instant case, this was not an unreasonable determination

---

[4] Neither Mickey nor Stuart served on Briner's jury. (T. at 467).

because every juror who served indicated that he or she would presume Briner was innocent unless proven guilty beyond a reasonable doubt. (T. at 15-430).

Moreover, the judge instructed the jurors before trial that it was their "solemn responsibility to determine whether the State has proved its accusations beyond a reasonable doubt against [Briner]." (T. at 469). They were told that their verdict must be based "solely on the evidence or the lack of evidence and the law." (*Id.* at 469). They were also told not to form any opinion on the merits of the case until they heard all the evidence. (*Id.* at 470). In his charge to the jury, the judge repeated his instruction that Briner was presumed innocent until proven guilty beyond a reasonable doubt and that that "[i]t is to the evidence introduced in this trial and to it alone that you are to look for that proof." (*Id.* at 1277-78). A jury is presumed to follow its instructions. *Weeks*, 528 U.S. at 226. Accordingly, without any evidence that a juror was biased, we must presume that every juror on this panel followed the judge's instructions. As a result, Petitioner cannot demonstrate prejudice, and reasonable competent appellate counsel could have decided against raising this issue on direct appeal. Claim Five is denied. 28 U.S.C. § 2254(d).

### E.     Claim Six

Briner asserts that the prosecutor improperly shifted the burden of proof when he argued:

> But in blood splatter you really need an expert to tell you what's that's all about. It didn't matter where the stab wounds came from, but how they were struck and in what sequence they were struck, it's irrelevant really. What's important is that five out of six to his chest, in a three by three and half inch space, were fatal. That's what's important. And that bold splatter is just – you're able to figure it out by your

common sense.  And like I said to you, the importance of that also, is the fact that it was sprayed all over the Defendant.

(Doc. 1 at 19-20).  Briner argues that the prosecutor's statements misled the jury on the burden of proof.  He asserts that "[r]easonable effective assistance of appellate counsel would have recognized these comments unconstitutionally shifted the burden to the defendant." (*Id.* at 21).  Briner raised this claim in is state petition for writ of habeas corpus, and it was denied by Florida's Fifth DCA. (Ex. V).

Respondent notes that "Briner selectively quotes from the State record to misrepresent the prosecutor's closing argument." (Doc. 14 at 20).  Indeed, earlier in the closing argument, the prosecutor explained that no blood splatter expert was required in this case because of the amount of blood at the scene. (T. at 1195).  This explanation was in response to Counsel's opening statement in which he insinuated that the police investigation was inadequate because no blood splatter expert had been called to the crime scene. (*Id.* at 525-27).  In addition, during trial, Counsel cross-examined the investigating detective regarding the lack of a blood splatter expert.  (*Id.* at 1022-23).  In the defense closing argument, Counsel argued that a blood splatter expert was necessary to "explain the order of things" and that the lack of a blood splatter expert proved beyond a reasonable doubt that Briner was not guilty (*Id.* at 1228).  Reasonable competent appellate counsel could have concluded that the prosecutor's statements regarding the blood splatter expert was an invited response to Counsel's opening statement and cross-examination of the detective regarding the state's lack of an expert. "A defendant is not at liberty to complain about a prosecutor's comments in closing argument when the

comment is an invited response." *Bell v. State*, 758 So.2d 1266, 1266 (Fla. 5th DCA 2000)

(citing *Parker v. State*, 641 So.2d 369 (Fla.1994)).   Briner cannot satisfy *Strickland*'s

performance prong on Claim Six.  The claim is denied. 28 U.S.C. § 2254(d).

## F.     Claim Seven

Briner asserts that he was questioned without the presence of an attorney, even

though he unambiguously requested one. (Doc. 1 at 22).  Briner argues that, during the

reading of his *Miranda*[5] rights, he was asked by Detective Mynheir whether he wished to

speak to the police without an attorney. (*Id.*).  He claims he told Mynheir that he could

not afford an attorney, and that he did not understand that an attorney would be

provided without charge. (*Id.*).  He then told Mynheir to "get a lawyer today.  Fine,

because get me one." (*Id.* at 22).  He asserts that Mynheir ignored his request and

"continued the dialog until [he] agreed to talk to him." (*Id.* at 23).  Briner raised this claim

on direct appeal, and it was denied by Florida's Fifth DCA without a written opinion.

(Ex. E).  A review of the record supports the state courts' rejection of this claim.

In *Miranda*, the Supreme Court recognized that an accused has a constitutional

right not to be compelled to make incriminating statements during the process of

interrogation. 384 U.S. at 467. A suspect in custody also has the right to consult with

counsel prior to and during questioning. *Id.* at 469. The defendant may waive the

---

[5] *Miranda v. Arizona*, 384 U.S. 436 (1966) (statements made by a defendant in police custody in response to interrogation are admissible at trial only if the defendant was informed of his right to consult with an attorney and of the right against self-incrimination).

privilege against self-incrimination, but the prosecutor must show that the waiver was voluntary, knowing, and intelligent. *Id.* at 475.

Prior to trial, Briner filed a motion to suppress his statements to the police. (Doc. 8-1 at 246-47). The trial court held an evidentiary hearing at which the recorded interview with Detective Mynheir was played. (*Id.* at 67). After reading Briner his rights, the following exchange between Mynheir and Briner occurred:

> Q. Knowing these rights, so you agree to talk to me now without an attorney?
>
> A. I'll do what I can, man. I want this to be over (indiscernible.)
>
> Q. So do we. Do you want to talk to us without an attorney?
>
> A. (indiscernible.) I just really don't know, man. I can't afford an attorney. You don't want to – I want to know what the hell's going on (indiscernible.)
>
> Q. Okay. I can't make that decision for you. If you would like to talk to me, I'll listen to anything you have to say, Steve, but I want you to be sure you know your rights. Okay. You can go ahead and made that – you want to talk to me now?
>
> A. What's the quickest way I can get an attorney here?
>
> Q. Waiting for (indiscernible.)
>
> A. (indiscernible) anything at home (indiscernible.) I don't know, man. I don't know what frigging happened, dude, I'm sitting here talking to you to try to figure out what happened. What the fuck (indiscernible) life either.
>
> Q. Well, if you're not going to make that choice, I can't make it for you, Steven. I would love to sit down and listen to what you have to say, but I want you to be

aware of your rights.  That you don'' have to tell me
jack. Okay.

A.      -- get a lawyer today.  Fine, because you get me one.

Q.      If you want a lawyer –

A.      No, are we starting on that – sitting there telling I you
I need a lawyer, will you get me one?

Q.      Yes.

A.      Okay, then I'll talk with you then.

Q.      Okay.  Are you sure you want to talk to me now
without a lawyer present?  Are you sure?

A.      Yeah. I think –

Q.      I need your signature here.  Today's date is May 7th.

(*Id.* at 27-28).  The trial court found that, based upon a totality of the circumstances, Briner

"understood he had a right to an attorney and he knowingly, intelligently and voluntarily

waived that right." (Ex. 8-1 at 289, 292).  The court noted that Briner had been previously

arrested and represented by the public defender. (*Id.* at 289). The trial court concluded

that Briner's statements "were equivocal and rhetorical, not a clear assertion or question"

and that there was "no unambiguous or unequivocal request for counsel, or for a further

explanation of his right to counsel." (*Id.*).

Here, it is undisputed that Mynheir read Briner his *Miranda* rights.  It is also

undisputed that Briner was not a stranger to arrest or to police interrogation.  He had

been represented by the public defender's office "five or six" times, and knew that a

lawyer would be appointed to represent him if requested. (Doc. 81-1 at 132).  It was not

unreasonable, or contrary to clearly established Supreme Court precedent, for the state

courts to conclude that Briner did not clearly invoke his *Miranda* rights; his requests for counsel were, at best, equivocal and appeared to be directed towards a hypothetical situation in which Briner *might* determine during the course of the interview that he wanted a lawyer. *See Davis v. United States*, 512 U.S. 452, 459 (1994) (holding that a suspect "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney."); *McNeil v. Wisconsin*, 501 U.S. 171, 178 (1991) ("[T]he *likelihood* that a suspect would wish counsel to be present is not the test for [whether a suspect has invoked his right to counsel]") (emphasis in original).  On this record, the state courts reasonably concluded that Briner's waiver of his *Miranda* rights was voluntary, and that he did not make an unequivocal request for counsel during the course of the interview. Accordingly, Briner is not entitled to federal habeas relief on Claim Seven.

Any of Briner's allegations not specifically addressed herein have been found to be without merit.  Because the Petition is resolved on the record, an evidentiary hearing is not warranted. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (if the record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing).

## IV.    Certificate of Appealability

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability ("COA"). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28

U.S.C. § 2253(c)(2). To make such a showing, a petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller–El*, 537 U.S. at 335–36. Petitioner has not made the requisite showing in these circumstances.

Because Briner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

Accordingly, it is hereby **ORDERED** and **ADJUDGED** as follows:

1. The 28 U.S.C. § 2254 petition for habeas corpus relief filed by Steven Max Briner is denied on the merits. This case is dismissed with prejudice.

2. Petitioner is **DENIED** a certificate of appealability.

3. The **Clerk of Court** is directed to terminate any pending motions, enter judgment accordingly, and close this case.

**DONE AND ORDERED** in Orlando, Florida on January 25, 2018.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties
SA: OrlP-4